IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Civil No.   4:22-cv-00174 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| A 1979 Beechcraft A36TC, | ) | VERIFIED COMPLAINT FOR |
| Serial Number EA-14, | ) | FORFEITURE *IN REM* |
| Reg. Tail No. N7728M, its | ) | |
| logbook(s), and related | ) | |
| records, equipment, and | ) | |
| accessories, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, United States of America hereby files and serves this VERIFIED COMPLAINT IN REM and alleges as follows:

## I.   NATURE OF THE ACTION

1.     This is an action to forfeit and condemn specific property to the use and benefit of the United States of America ("Plaintiff") for its involvement, as set forth below, in violations of 21 U.S.C. § 846 (attempt and conspiracy) and § 841(a)(1)(prohibited acts).

2.     The Defendant aircraft and its related equipment and accessories are believed to be subject to forfeiture pursuant to 21 U.S.C. § 881(a)(4), as a conveyance, including an aircraft and its pertinent equipment and accessories, used or intended to be used to transport, or in any manner to facilitate the transportation, sale, receipt, possession, and concealment of  controlled substances manufactured, distributed, dispensed, and acquired in violation of Subchapter 1, Title 21, United States Code.

3.     The Defendant logbook(s) and other pertinent records are believed to be subject to forfeiture pursuant to 21 U.S.C. § 881(a)(5) as books and records which are used, or intended for use, in violations of Subchapter 1, Title 21, United States Code.

## II.     DEFENDANT *IN REM*

4.     The Defendant property is generally described as:

A 1979 Beechcraft A36TC, Serial Number EA-14, Registration Tail Number N772M, registered to FlyingO LLC, its logbook(s) and related records, equipment and accessories, including keys and its airworthiness certificate.

The Defendant aircraft is in the custody of the Government, secured in Ames, IA.

## III.     JURISDICTION, VENUE, AND PROCEDURAL AUTHORITY

5.     This Court has jurisdiction over an action commenced by the United States as plaintiff, under 28 U.S.C. § 1345.

6.     This Court has original jurisdiction over this action for the recovery or enforcement of a fine, penalty, or forfeiture incurred under an Act of Congress, under 28 U.S.C. § 1355(a).

7.     This Court also has jurisdiction over this action because acts or omissions giving rise to this civil forfeiture occurred in the Southern District of Iowa, therefore, this action may be brought in this District, pursuant to 28 U.S.C. § 1355(b)(1)(A).

8.     Venue is proper in this District because this is a civil proceeding for the recovery of a pecuniary fine, penalty, or forfeiture, and is being prosecuted in the District where the action accrues and where the defendant property is found, as authorized by 28 U.S.C. § 1395(a) and (b).

9.     Venue is also generally proper in this District under 28 U.S.C. § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim occurred in, or a substantial part of the property that is the subject of the action is situated in," this District.

10.    The general rules for civil forfeiture proceedings are set forth in 18 U.S.C. § 983 and Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

## IV.    FEDERAL CONTROLLED SUBSTANCE LAW

11.    The "Controlled Substances Act" was enacted by Congress as Title II of the "Comprehensive Drug Abuse Prevention and Control Act of 1970," Pub.L. No. 91-513, 84 Stat. 1236 (1970) (codified at 21 U.S.C. §§ 801-904).

12.    The term "controlled substance" is defined in 21 U.S.C. § 802(6) to mean a drug or other substance, or immediate precursor, included in any of the five schedules of such substances set forth in subchapter I of Title 21.

13.    Schedule I substances have a high potential for abuse, and have no currently accepted medical use in treatment in the United States, and there is a lack of accepted safety for use of the drug under medical supervision. 21 U.S.C. § 812(b)(1)(A) - (C).

14.    Marijuana is a Schedule I controlled substance.

15.    Under the Controlled Substances Act, it is unlawful to distribute, dispense, or possess with intent to distribute a controlled substance unless authorized

3

by federal law to do so.  21 U.S.C. § 841(a)(1).

16.     Under the Controlled Substances Act, it is unlawful to conspire with others to violate its prohibitions.  21 U.S.C. § 846.

## V.     FACTS

17.     The Drug Trafficking Organization (DTO) involved in the investigation discussed herein uses certified pilots and purchased aircraft, including the Defendant aircraft and its equipment, and, by extension, related records, equipment and accessories, including its logbook(s), that the owner is required to maintain in order to legally fly and to facilitate the distribution of marijuana and subsequent drug proceeds across California, Colorado, Texas, Iowa, Utah, Kansas, New Mexico, and Arkansas.

18.     The DTO is believed to generate substantial drug proceeds from the sale of marijuana exceeding the $300,000.00 in U.S. currency seized by law enforcement to date.

### October 22, 2021

19.     On October 22, 2021, a United States Customs and Border Protection, Aviation Enforcement Agent (Aviation Enforcement Agent) with the Air and Marine Operations Center contacted the U.S. Drug Enforcement Administration (DEA) regarding a suspicious aircraft bearing tail number "N772M" (Defendant aircraft) inbound from Corona Municipal Airport, Corona, CA, recently making a brief landing/takeoff at Hinton Municipal Airport in Hinton, OK, with a possible landing at the Heber Springs Municipal Airport in Heber Springs, AR.

4

20.    The Aviation Enforcement Agent identified the Defendant aircraft as suspicious because of the short amount of travel time in between arrival/departure at Corona Municipal Airport, small aircraft capacity, and expensive travel costs, all of which are, in his training and experience, consistent with an aircraft being leased or rented to transport illegal drugs across the United States and/or internationally.

21.    At approximately 3:46 p.m. on October 22, 2021, a DEA agent contacted a law enforcement officer at the Cleburne County, AR Sheriff's Office about the suspicions concerning the Defendant aircraft and its anticipated landing at Heber Springs Municipal Airport.

22.    At approximately 3:55 p.m. on October 22, 2021, law enforcement officers from Cleburne County Sheriff's Office and the Heber Springs Police Department established surveillance in the vicinity of Heber Springs Municipal Airport in anticipation of the Defendant aircraft landing.

23.    At approximately 4:04 p.m. on October 22, 2021, law enforcement observed the Defendant aircraft landing at the Heber Springs Municipal Airport.

24.    After the Defendant aircraft landed, law enforcement watched it taxi along the runway towards the end of the Heber Springs Municipal Airport towards the aircraft hangers.

25.    Shortly thereafter, law enforcement approached the Defendant aircraft in order to conduct a pilot certificate inspection with the pilot of the Defendant aircraft, in accordance with applicable authority.

26.    As law enforcement approached the Defendant aircraft, it redirected

back toward the runway. In response, two police vehicles activated their emergency lights as they approached the Defendant aircraft.

27.     As law enforcement approached the Defendant aircraft, it did not stop, but accelerated, and turned in the direction of law enforcement vehicles, missing a collision with the law enforcement vehicles by four feet or less.

28.     The Defendant aircraft proceeded down the Heber Springs Municipal Airport runway, and successfully took off.

29.     A pilot engaging in legal activities would have no reason to flee in such a manner from law enforcement.

30.     Law enforcement from the Cleburne County Sheriff's Office notified DEA what had occurred, and that the Defendant aircraft was piloted and solely occupied by a white male with a beard and sunglasses. (Pilot # 1.)

31.     A law enforcement officer from the Cleburne County Sheriff's Office at the scene was later provided with a Facebook profile photograph and state issued driver's license photograph for Pilot # 1. The Cleburne County Sheriff's Office law enforcement officer positively identified Pilot # 1 as the pilot of the Defendant aircraft who flew away from law enforcement at the Heber Springs Municipal Airport.

32.     At approximately 4:15 p.m. on October 22, 2021, the Air and Marine Operations Center used radar data to observe the Defendant aircraft in the vicinity of Holly Mountain Airpark in Clinton, AR.

33.     Shortly thereafter, the Aviation Enforcement Agent notified DEA that the Defendant aircraft made a possible landing at Holly Mountain Airpark. However,

6

the Defendant aircraft was flying at a very low altitude, making it difficult for law enforcement to track the Defendant aircraft.

34.    At approximately 5:25 p.m. on October 22, 2021, officers from the Van Buren County Sheriff's Office contacted Little Rock, AR DEA and reported it had acquired one (1) large black duffel bag containing an unknown quantity of vacuum sealed packages of suspected marijuana.  (Duffel Bag # 1.)

35.    Drug dealers vacuum-seal marijuana in order to try and prevent its detection by law enforcement officers or drug-detection dogs familiar with the odor of marijuana.

36.    Little Rock DEA agents, with the assistance of the Air and Marine Operations Center, later identified the location at which the Van Buren County deputy sheriff had acquired Duffel Bag # 1 as geographically in-line with the Defendant aircraft's west by northwest flight path following the incident at Heber Springs Municipal Airport.

37.    At approximately 5:26 p.m. on October 22, 2021, Little Rock DEA conducted an open-source flight tracker of the Defendant aircraft and located the Defendant aircraft  approximately fifty (50) miles east of Tulsa, Oklahoma.

38.    Little Rock DEA then conducted an open-source database check on the Defendant aircraft and identified the registrant/owners of the Defendant aircraft as "FlyingO LLC" located in Denver, CO, and signee Thomas OWENS.

39.    Little Rock DEA identified the Defendant aircraft as a 1979 Beechcraft A36TC, Serial Number EA-14, Registration Tail Number: N772M.

7

40.     Additionally, Little Rock DEA conducted a brief investigation into Pilot #1 and the subject plane's owner, OWENS Pilot # 1 was identified as a certified pilot for REDTAIL AIR ADVENTURES located in Moab, Utah. OWENS was discovered to have had a prior employment history as a "Former Aircraft pilot at REDTAIL AIR ADVENTURES", "Moab, Utah", "May 2019 – October 2019".

41.     At approximately 5:36 p.m. on October 22, 2021, an Arkansas Game and Fish Officer contacted Little Rock DEA and stated his agency had acquired another large black duffel bag containing an unknown quantity of vacuum sealed packages of suspected marijuana located in Greers Ferry Lake, northwest of Heber Springs, AR. (Duffel Bag # 2.)

42.     Little Rock DEA later identified the location at which the Arkansas Game & Fish officer had acquired Duffel Bag # 2 as also being geographically in-line with the Defendant aircraft's west by northwest flight path following the incident at Heber Springs Municipal Airport.

43.     At approximately 6:25 p.m. on October 22, 2021, Little Rock DEA met with the Arkansas Game & Fish officer with Duffel Bag # 2 and observed it was labeled "REDSEASONS", with gold in color zippers and a white in color rope attached to the handle of the black bag.

44.     Inside Duffel Bag # 2, Little Rock DEA identified/acquired fifteen (15) black and translucent vacuum sealed packages containing suspected marijuana. Of the fifteen (15) packages, Little Rock DEA identified ten (10) packages labeled "MOCHILATO" and five (5) labeled "PBC". The fifteen (15) vacuum sealed packages

appeared to be double vacuum sealed in an effort to evade law enforcement detection.

45.   At approximately 7:31 p.m. on October 22, 2021, Little Rock DEA met with a Van Buren County deputy sheriff and identified/acquired Duffel Bag # 1, also labeled "REDSEASONS", with gold in color zippers.

46.   Inside Duffel Bag # 1, Little Rock DEA identified/acquired fifteen (15) black and translucent vacuum sealed packages containing suspected marijuana. Of the fifteen (15) packages, Little Rock DEA law enforcement identified ten (10) packages labeled "NEW YORK CHEESECAKE" and five (5) labeled "PBC". The fifteen (15) vacuum sealed packages appeared to be double vacuum sealed in an effort to evade law enforcement detection.

47.   The fifteen (15) packages acquired from the Van Buren County deputy sheriff in Duffel Bag # 1 were identical to the fifteen (15) packages acquired from the Arkansas Game & Fish officer in Duffel Bag # 2.

48.   The fact the abandoned bags of vacuum-sealed marijuana were discovered along the flight path of the fleeing Defendant aircraft strongly suggest the bags were dumped from the plane as it fled from law enforcement.

49.   At approximately 10:30 p.m. on October 22, 2021, Little Rock DEA transported the two (2) black duffel bags and thirty (30) black vacuum sealed packages to the Little Rock DEA office and transferred custody to the "Drug Evidence Custodian" (DEC) for safekeeping.

50.   Little Rock DEA conducted a field test of two (2) black vacuum sealed packages for the presence of marijuana, one (1) from each "REDSEASONS" bag

containing (15) black and translucent vacuum sealed packages. The tests were positive for the presence of marijuana.

51.    At approximately 10:45 p.m. on October 22, 2021, the Air and Marine Operations Center  used radar to observe the Defendant aircraft in the vicinity of, and briefly land at, Meadow Lake Airport in Peyton, CO.

52.    At approximately 11:15 p.m. on October 22, 2021, an Aviation Enforcement Agent notified Little Rock DEA the Defendant aircraft was located northeast of Moab, Utah, with an anticipated landing at Canyonlands Regional Airport in Moab, UT, in Grand County, Utah.

53.    At approximately 11:47 p.m. on October 22, 2021, law enforcement officers of the Grand County Sheriff's Department established surveillance in the vicinity of Canyonlands Regional Airport in anticipation of the Defendant aircraft landing, confirmation of the Defendant aircraft landing, and identification of the Defendant aircraft pilot.

54.    All times recorded/documented in this encounter were originally in Mountain Daylight Time (MDT) and converted into Central Daylight Time (CDT) for report consistency.

## October 23, 2021

55.    On October 23, 2021, at approximately 00:05 a.m., Grand County Sheriff's Department law enforcement officers observed a gray Toyota vehicle exit the Canyonlands Regional Airport runway, travelling in a southeast direction on Highway-191 toward Moab, UT.

56.    Law enforcement officers conducted a traffic stop of the gray Toyota vehicle for having no visible illumination of the rear vehicle license plate light and driving off center of the travel lane, approximately six inches from the white fog line, consistent with a drowsy or impaired driver.

57.    The driver of the gray Toyota identified himself by name, which law enforcement had previously determined was the name of Pilot # 1.

58.    Pilot # 1 said he recently arrived at the Canyonlands Regional Airport from Grand Junction via a borrowed aircraft belonging to a friend.

59.    At approximately 00:48 a.m. on October 23, 2021, morning, law enforcement officers entered Canyonlands Regional Airport in an effort to locate the Defendant aircraft.

60.    In the southwest corner of Canyonlands Regional Airport, law enforcement officers located the Defendant aircraft. The Defendant aircraft was unoccupied, and the engine cover was warm to the touch, indicating the engine had recently been running.

61.    At approximately 08:30 a.m. on October 23, 2021, a Grand County Sheriff's Department law enforcement officer contacted the Utah Highway Patrol to arrange for a certified drug-detection canine unit to conduct a free air sniff around the Defendant aircraft for the presence of illegal drugs.

62.    At approximately 09:50 a.m. on October 23, 2021, the Utah Highway Patrol canine trooper observed the Defendant aircraft parked in the southwest corner of Canyonlands Regional Airport among multiple aircraft.

11

63.     At approximately 09:51 a.m. on October 23, 2021, the Utah Highway Patrol canine trooper deployed his partner, a trained narcotics detector canine certified in detection of marijuana, methamphetamine, heroin, and cocaine, to conduct a free air sniff around the outside of the Defendant aircraft for the presence of illegal drugs.

64.     As the canine was slightly behind and to the east of the Defendant aircraft, the dog appeared to hook an odor and start scenting. The canine proceeded towards the Defendant aircraft, walked under the Defendant aircraft tail, approached the rear right side of the Defendant aircraft, and pressed his nose to the seam of the Defendant aircraft door, while sniffing intensely.

65.     Shortly thereafter, based on the training and experience of the canine handler, the canine gave a positive indication for the presence of illegal drugs within the Defendant aircraft.

66.     After the positive indication for the presence of illegal drugs within the Defendant aircraft, the canine handler notified the Aviation Enforcement Agent and Little Rock DEA law enforcement of the positive indication.

**October 25, 2021**

67.     On October 25, 2021, Little Rock DEA contacted the manager of Hinton Municipal Airport in Hinton, OK where the Defendant aircraft landed prior to landing at Heber Springs Municipal Airport, and acquired a scanned "Fuelmaster Transaction Receipt Report" for aviation gas transaction # 0003803.

68.     The aviation gas transaction receipt provided the following information.

Transaction Number: 0003803; Date: 10/22/2021; Invoice Number: 6523; Card: Visa; Account Number: ************8859; Pump: 1; Product: 4; AVGAS 100LL; Quantity: 92.30 GL; Price/Unit: $4.2500; Total Cost: $392.28.

## October 26, 2021

69.   On October 26, 2021, at approximately 09:30 a.m., Little Rock DEA law enforcement investigating the suspected drug-dealing acquired the two (2) black duffel bags and thirty (30) black vacuum sealed packages from the DEA Drug Evidence Custodian (DEC), transported the two (2) black duffel bags and thirty (30) black vacuum sealed packages to law enforcement from the Cleburne County Sheriff's Office, and transferred custody of the two (2) black duffel bags and thirty (30) black vacuum sealed packages to law enforcement from the Cleburne County Sheriff's Office for processing into evidence and safekeeping in accordance with law enforcement policies and procedures of the Cleburne County Sheriff's Office.

## November 15, 2021

70.   On November 15, 2021, at approximately 5:00 p.m., a Fairfield Bay, Arkansas Police Department Officer was informed about another large bag of marijuana located by an individual on an ATV near Burnt Rock Falls Road in Fairfield Bay  (Duffel Bag # 3.)

71.   The Fairfield Bay Police Department Officer proceeded to meet the individual at the location where Duffel Bag # 3 was discovered and activated his body camera to record the find.

72.   The Fairfield Bay Police Department Officer identified fifteen (15)

individual vacuum sealed plastic bags of marijuana within Duffel Bag # 3. The officer noted geolocation 35.596917, -92.266379 as the location where Duffel Bag # 3 was found.

73.    The Fairfield Bay Police Department Officer seized Duffel Bag # 3, notified his chief and a local drug task force, and secured Duffel Bag # 3 at his Police Department, in accordance with department policies and procedures.

74.    Little Rock DEA agents, with the assistance of the Air and Marine Operations Center, later identified the location where the Fairfield Bay Police Department Officer acquired Duffel Bag # 3 as being geographically in-line with the Defendant aircraft's flight path after the incident at Heber Springs Municipal Airport.

75.    When Duffel Bag # 3 was opened that day, law enforcement located fifteen (15) bags of vacuum sealed bags containing suspected marijuana identical to the "REDSEASONS" bags seized by law enforcement on October 23, 2021. Twelve (12) bags of marijuana inside were labeled "BISCOTTI". Three (3) bags inside were labeled "MOCHILATO".

**November 16, 2021**

76.    On November 16, 2021, a local drug task force agent seized Duffel Bag # 3 from the Fairfield Bay Police Department and transported/stored it to the drug task force, pursuant to applicable policies and procedures.

**November 18, 2021**

77.    On November 18, 2021, at approximately 10:00 a.m., Little Rock DEA

and a drug task force agent identified/acquired Duffel Bag # 3, which had distinguishing characteristics, such as a "REDSEASONS" label, with gold in color zippers. Inside Duffel Bag # 3, Little Rock DEA law enforcement identified/acquired fifteen (15) black and translucent vacuum sealed packages containing suspected marijuana. Of the fifteen (15) packages, Little Rock DEA identified twelve (12) packages labeled "BISCOTTI" and three (3) labeled "MOCHILATO". The fifteen (15) vacuum sealed packages appeared to be double vacuum sealed in an effort to evade law enforcement detection.

78.     Duffel Bag # 3, labeled "REDSEASONS", and the fifteen (15) black vacuum sealed packages containing suspected marijuana, identically matched Duffel Bags # 1 and # 2 that were located and seized by law enforcement on October 22, 2021.

79.     At approximately 11:45 a.m. that morning, Little Rock DEA transported Duffel Bag # 3 to the Cleburne County Sheriff's Office, and transferred custody of it and its contents to law enforcement from the Cleburne County Sheriff's Office, Duffel Bag # 3 was processed into evidence and safekeeping in accordance with law enforcement from the Cleburne County Sheriff's Office policies and procedures.

80.     Based on the aforementioned, the evidence shows that on October 22, 2021, the Defendant aircraft was piloted and solely occupied by Pilot # 1, whose identity is known to law enforcement, and following the incident with law enforcement at approximately 3:55 p.m. that afternoon at Heber Springs Municipal Airport, Pilot # 1 proceeded to throw Duffel Bags # 1, 2, and 3 and their contents out

15

of the Defendant aircraft.

## November 23, 2021

81.    On November 23, 2021, law enforcement with the Des Moines, Iowa DEA received information from Little Rock DEA about a possible aircraft that had been transporting bulk marijuana across multiple States, including California, Arkansas, and Iowa.  Little Rock DEA identified the aircraft as a Beechcraft A36TC bearing tail number N772M, or the "Defendant aircraft".

82.    On that same date, Des Moines DEA law enforcement observed, via a flight tracking application, that the Defendant aircraft departed New Mexico and displayed a flight path trajectory towards the Ames Municipal Airport in Ames, Iowa.

83.    Shortly thereafter, Des Moines DEA law enforcement directly observed the Defendant aircraft land at the Ames Municipal Airport.  Des Moines DEA law enforcement approached the Defendant aircraft and its pilot in order to conduct a Pilot Certificate Inspection, in accordance with 14 CFR 61.3.

84.    The pilot was identified by law enforcement by name, which the pilot later confirmed.  He will be referred to herein as Pilot # 2.

85.    Pilot # 2 stated he was meeting a friend for lunch, but was unable to provide Des Moines DEA law enforcement the friend's name.

86.    Those involved in illegal drug dealing are often unable to recall the details of their "cover story" when asked about it by law enforcement.

87.    Des Moines DEA law enforcement asked Pilot # 2 if he was there to pick up money and if that person was already at the airport, to which Pilot # 2 answered

in the affirmative.

88.     Pilot # 2 agreed to cooperate with law enforcement and stated the reason he had flown to Ames, Iowa, was to pick up between $3,000.00 and $30,000.00 in U.S. currency for a friend.

89.     The friend had instructed Pilot # 2 to contact "Rowdy Sparks" (believed to be an alias) when he arrived at the Ames airport.

90.     Pilot # 2 showed Des Moines DEA law enforcement messages on Signal (an end-to-end encrypted messaging application) between Pilot # 2 and "Rowdy", which advised a "thick blonde chick with a reddish suitcase will bring it in."

91.     Moments later, Pilot # 2 met an unidentified female at the airport entrance, who gave Pilot # 2 a red suitcase.

92.     Immediately following the hand-off, Pilot # 2 walked back inside the Ames airport terminal and met with Des Moines DEA law enforcement, including me.

93.     A Des Moines DEA Agent opened the red suitcase, and observed an undetermined number of rubber-banded bundles of bulk U.S. currency in both compartments of the red suitcase

94.     Des Moines DEA later determined the amount of U.S. currency in the red suitcase, via official count, was $325,690.00.

95.     On that same date, an Iowa State Police Trooper and his trained drug-detection canine conducted a free air sniff around the red suitcase containing bulk U.S. currency for the presence of illegal drugs. In the training and experience of the

dog handler, his canine gave a positive indication for the presence of illegal drugs within the red suitcase containing the bulk U.S. currency.

96.     Additionally, the drug-detection team conducted a free air sniff around the Defendant aircraft for the presence of illegal drugs, and the canine handler advised, based on his training and experience, the canine gave a positive indication for the presence of illegal drugs within the Defendant aircraft.

97.     During a post-*Miranda* interview with Pilot # 2, he stated a contact he identified by name asked him to pick up some money owed to the contact.  Pilot # 2 was unsure of the exact amount of U.S. currency he was to pick up, but remembered a figure between $3,000.00 and $30,000.00.   Pilot # 2 claimed his payment was reimbursement for fuel expenses. Pilot # 2 was supposed to fly the red suitcase containing U.S. currency back to Taos, New Mexico, and give the red suitcase containing U.S. currency to the contact  who works in the marijuana industry.

98.     Des Moines DEA seized the $325,690.00 in bulk U.S. currency and stored the $325,690.00 in U.S. Currency at the Des Moines DEA office, in accordance with applicable policies and procedures.

**November 24, 2021**

99.     On November 24, 2021, during a post-*Miranda* interview with Pilot # 2, Pilot # 2  said the Defendant aircraft is OWENS' plane and it is in OWENS' name. Pilot # 2 said OWENS is from Denver, Colorado, and is in the marijuana business. OWENS had told him a few months ago that he transports "stuff", or marijuana, around the state of Colorado.

18

100.    During this same post-*Miranda* interview, investigators asked Pilot # 2 if the money he was picking up was from the sale of marijuana. Pilot # 2 stated that he checked the FAA regulations and believes that he can legally fly money.

101.    Investigators asked Pilot # 2 if the money he was picking up was drug proceeds. Pilot # 2 said that through deductive reasoning he knows that he was picking up drug proceeds.

102.    Pilot # 2 stated his contact asked him to pick up some money owed to him.  Pilot # 2 stated his payment was reimbursement for fuel expenses. Pilot # 2 stated he was supposed to give his contact the seized currency when Pilot # 2 returned to the Taos, New Mexico Airport.  Pilot # 2 advised that his contact works in the marijuana industry.

103.    Investigators showed Pilot # 2 a state-issued driver's licenses  picture of Pilot # 1, which Pilot # 2 positively identified as being another pilot that Pilot # 2 knows. Pilot # 2 said Pilot # 1 had flown into Taos, New Mexico.

104.    Pilot # 2 referred to the incident at the Heber Springs Airport in Arkansas on October 22, 2021, stating Pilot # 1 told him he had had some sort of altercation where police pulled out onto an active runway.

105.    Agents asked Pilot # 2 if Pilot # 1 had any narcotics in the Defendant aircraft to which Pilot # 2 responded in the affirmative.

106.    Pilot # 2 stated Pilot # 1 told him that he threw it (marijuana) out of the plane. Pilot # 2 stated his contact also reached out to Pilot # 2 and informed Pilot # 2 of the encounter with law enforcement at the airport in in Arkansas.  Pilot # 2 was

told Pilot # 1 jettisoned some marijuana out of the Defendant aircraft, the same aircraft Pilot # 2 was flying, namely the Defendant aircraft. Pilot # 2 was told Pilot # 1 threw the marijuana out over a lake.[1]

107.   Pilot # 2 stated that his contact told him that he called people to go look for the marijuana. Pilot # 2 advised the marijuana was supposedly going to somewhere in Arkansas, "something" Springs, Arkansas.

## February 2022

108.   In February 2022, Arkansas DEA law enforcement and others working on this investigation met with and interviewed a cooperating member of the above-described marijuana distribution operation. This person is referred to herein as CM # 1.

109.   CM # 1 confirmed the Defendant aircraft was used in October 2021, as generally described above, to transport multiple black duffel bags labeled "REDSEASONS", and filled with marijuana, from Corona Municipal Airport to Heber Springs Municipal Airport. CM # 1 identified Pilot # 1 as the pilot of the plane on October 21, 2021. CM # 1 said, after the encounter with law enforcement on the runway, as described above,  Pilot # 1 took off, and, while in flight, proceeded to throw all of the REDSEASONS duffel bags out of the Defendant aircraft.

110.   The DEA attempted an administrative forfeiture of the Defendant aircraft, and it was contested by OWENS, who alleged the owner of the Defendant

---

[1]Duffel Bag # 2 was found near Greers Ferry Lake, northwest of Heber Springs, AR on October 22, 2021.

aircraft was FlyingO LLC in Denver, Colorado,   Also, in a Petition for Remission/Mitigation filed by OWENS though his attorney essentially alleged that the person piloting the Defendant aircraft on the date it was seized had stolen the Defendant aircraft, unbeknownst to the owner or the plane's prospective purchasers..

## VI.   CLAIM FOR RELIEF

WHEREFORE, the United States prays that the defendant property be forfeited to the United States and that it be awarded its costs and disbursements in this action and for such other and further relief as the Court deems property and just.

Respectfully submitted,

Richard D. Westphal
United States Attorney

By:   */Craig Peyton Gaumer*
Craig Peyton Gaumer
Assistant United States Attorney
U. S. Courthouse Annex,
Suite 286
110 East Court Avenue
Des Moines, Iowa 50309
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: craig.gaumer@usdoj.gov

# VERIFICATION

I, Curt A. Lieber, hereby verify and declare under penalty of perjury that I am a Special Agent with the U.S. Drug Enforcement Administration, Des Moines Resident Office, and that I have read the foregoing Verified Complaint and know the contents thereof and the matters contained in the Verified Complaint are true to my own knowledge, except for those matters not within my own personal knowledge and as to those matters, I believe them to be true based on reports I have read or other information I have learned.

The sources of my knowledge and information and the grounds for my belief are the official files and records of the United States and the U.S. Drug Enforcement Administration, Des Moines Resident Office and the Little Rock Resident Office and information provided to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent with the U.S. Drug Enforcement Administration.

Dated: May _23_, 2022.

Curt A. Lieber, Special Agent
U.S. Drug Enforcement Administration